## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JESSICA COHON, through her mother/next friend
Stevie Bass,

      Plaintiff,

vs.                            No. CIV-08-1115 LAM/RHS

STATE OF NEW MEXICO DEPARTMENT
OF HEALTH, et al.,

      Defendants.

## ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR DECLARATORY/INJUNCTIVE RELIEF

**THIS MATTER** is before the Court on *Defendants' Motion to Dismiss Plaintiff's Claim for Declaratory/Injunctive Relief and Memorandum in Support (Doc. 33)* (hereinafter "*Motion to Dismiss*"), filed on July 10, 2009 by the New Mexico Human Services Department, Carolyn Ingram, Pamela Hyde,[1] Alfredo Vigil, and Cindy Padilla (hereinafter "State Defendants"). On July 27, 2009, Plaintiff filed *Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Claim for Declaratory/Injunctive Relief (Doc. 34)* (hereinafter "*Response*"), and on August 7, 2009, State Defendants filed *Defendants' Reply in Support of Motion to Dismiss Plaintiff's Claims for Declaratory/Injunctive Relief (Doc. 37)* (hereinafter "*Reply*"). The undersigned United States Magistrate Judge, acting upon consent and designation pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), and having considered the parties' submissions, the

---

[1]Ms. Hyde is no longer Secretary of the New Mexico Human Services Department. Governor Richardson appointed Katie Falls to be nominated for confirmation in January 2010. Ms. Falls is currently the Acting Secretary. *See* Governor Richardson's November 23, 2009, press release, at www.hsd.state.nm.us.

1

relevant law, and otherwise being fully advised in the premises, **FINDS**, for the reasons set forth below, that State Defendants' *Motion to Dismiss* should be **GRANTED**.

## I.  BACKGROUND

The following facts are either undisputed or are viewed in a light most favorable to Plaintiff. *See Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007).  Plaintiff has a medical history of cerebral palsy and autism and is legally blind. ***Notice of Appeal From Administrative Hearing and Complaint for Injunctive and Declaratory Relief*** *(Doc. 1-2)* at 2 (attached to ***Joint Notice of Removal*** *(Doc. 1)*) (hereinafter "***Plaintiff's Notice of Appeal and Complaint***").  Plaintiff applied for "Mi Via Waiver" services under New Mexico's Home and Community Based Services Waiver provisions.[2]  *Id.*  Under the Mi Via Waiver program, participants over the age of 21 are given an annual budget of $34,553 (excluding residential support services) or $59,449[3] (including residential support services) to purchase goods and services.  ***Record***, Exhibit 2 at 160; *see also **Motion to Dismiss** (Doc. 33)* at 2, ***Plaintiff's Notice of Appeal and Complaint*** at 6.  Pursuant to NMAC § 8.314.6.17(B)(2) (2006), the annual budget for participants with no prior waiver cost experience is "calculated based on algorithms developed by the state for recipients of the same waiver population . . . with similar characteristics as the [M]i [V]ia participant." *See also* Mi Via Waiver Program Service Standards, ***Record***, Exhibit 3 at 162-63.  A participant's budget allotment can be

---

[2]Once a state enters into a partnership with the federal government to provide "medical assistance" through Medicaid, the state is required to provide a minimum level of benefits.  42 U.S.C. § 1396a(10)(A).  Under the Medicaid statute, "medical assistance" is defined to include nursing home care.  42 U.S.C. § 1396d(a)(4)(A).  As an alternative, Congress provides for home and community-based services as part of an optional waiver program which allows individuals who meet the level of care required for institutionalization in a nursing facility to live at home and receive state-funded medical care.  42 U.S.C. § 1396n(c)(1).  These programs are referred to as "waiver" programs because they allow exceptions to state plan requirements.  42 C.F.R. § 430.25(b).  The Mi Via Waiver program is such a program.  NMAC § 8.314.6.9 (2006).

[3]State Defendants state that the maximum annual budget amount is $5<u>4</u>,449 (*see **Motion to Dismiss** (Doc. 33)* at 2), but this appears to be a typographical error.  *See **Record***, Exhibit 2 at 160 (Mi Via Waiver Schedule of Participant Budgets stating that the maximum amount is $5<u>9</u>,449).

increased if the participant shows that she or he has one or more of the following: (1) a chronic physical condition; (2) a change in physical health status; (3) chronic or intermittent behavioral conditions or cognitive difficulties; or (4) a change in natural supports.  Mi Via Waiver Service Standards, **Record**, Exhibit 3 at 163-67.

Plaintiff was given an annual budget of $59,449 under the Mi Via Waiver program.  **Motion to Dismiss (Doc. 33)** at 2.  Plaintiff met the criteria for an increased budget allotment for chronic behavioral conditions and cognitive difficulties.  **Plaintiff's Notice of Appeal and Complaint (Doc. 1-2)** at 6.  After meeting with a consultant hired by the New Mexico Department of Health, Plaintiff submitted a proposed request for additional funding to make her total budget amount $116,080.  *Id.* at 7.  After an additional meeting which included Plaintiff, Mi Via Waiver program employees and the state consultant, Plaintiff submitted a revised budget request of $106,667.  *Id.* Finally, without input from Plaintiff, Defendant New Mexico Department of Health, the consultant, and Lovelace staff made a further deduction of $9,660.44 from Plaintiff's proposed budget, resulting in an approved budget of $97,007.24.  *Id.* at 7-8.  In making the final deduction of $9,660.44, Plaintiff was denied funding for: chiropractic and orthotic services, nutritional supplements, fleet enemas, ski lessons, swim punch card, funds to attend non-local conferences and meetings (including registration, hotel, and per diem), four DVDs, overnight care, care buddy merit increases, driver merit increases, community job advisor raises, and money in a reserve fund.  *Id.* at 2; **Motion to Dismiss (Doc. 33)** at 3.  Lovelace stated that the rejected requests were denied pursuant to NMAC § 8.314.6.17(C) (2006), which provides that requested services can be approved if they: (1) "increase the participant's functioning related to the disability;" (2) "increase the participant's

safety in the home environment;" or (3) "decrease [the participant's] dependence on other medicaid-funded services."). *See Record*, Exhibit 26 at 339-40.

Plaintiff requested and was provided an administrative evidentiary hearing concerning the items denied in her budget request. *Appellant Jessica Cohon['s] Statement of Appellant Issues (Doc. 10)* at 4. The administrative law judge made a determination that Plaintiff's additional budget requests met the criteria for Mi Via Waiver services, that the requests for chiropractic and orthotic services and nutritional supplements and fleet enemas should have been approved, but Defendant New Mexico Human Services Department had the discretion to disapprove the other services. *Record* at x-xi. Defendant Ingram, Medical Assistance Division Director, reversed the administrative law judge's determination that any of the additional budget requests should be approved, and stated that, because the additional budget requests exceeded the Mi Via budgetary allotment, they must meet the requirement that they be necessary to "keep the participant safe." *Id.* at i-ii.

On October 30, 2008, Plaintiff filed her appeal of the administrative decision in the First Judicial District Court of New Mexico. *Plaintiff's Notice of Appeal and Complaint (Doc. 1-2)* at 1. Plaintiff appeals the denial of her budget request (*id.* at 2), and claims "that the denial of the requested services is a violation of her civil rights as guaranteed under the federal and state constitutions, 42 U.S.C. § 1983, the Americans with Disabilities Act and Section 504 of the Rehabilitation Act" (*id.* at 3). Plaintiff asks for: (1) a declaration that State Defendants' failure to approve her budget requests was and is unlawful; (2) an injunction ordering State Defendants to treat all budget requests for Mi Via Waiver participants in the same manner and consistent with the Mi Via regulations and standards; and (3) attorneys' fees and costs. *Id.* at 17. State Defendants

removed the case to this Court on November 26, 2008.  ***Joint Notice of Removal*** *(Doc. 1)*.  In their ***Motion to Dismiss***, State Defendants ask the Court to dismiss Plaintiff's claims against all Defendants because Plaintiff has failed to state a claim for relief with respect to her due process, equal protection, Americans with Disabilities Act (hereinafter "ADA"), and Rehabilitation Act (hereinafter "§ 504") claims.  *Document 33* at 1-2, 10.

## II.  LEGAL STANDARDS

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if, accepting all facts alleged as true, Plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  To withstand a motion to dismiss, a complaint must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citations omitted).  The Tenth Circuit has explained that under this standard, a "plaintiff must nudge [her] claims across the line from conceivable to plausible." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citation and internal quotation omitted).  While a complaint does not need detailed factual allegations, a plaintiff must provide the grounds for entitlement to relief, which requires "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).  The complaint must contain enough facts to raise a reasonable expectation that discovery will reveal evidence of the alleged conduct. *Twombly*, 550 U.S. at 556.

The Court accepts as true all well-pled allegations and views them in the light most favorable to Plaintiff. *Ridge at Red Hawk, LLC*, 493 F.3d at 1177.  "Well-pled," however, means that the

allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The factual allegations must be enough to raise a right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.

### III.  ANALYSIS

State Defendants contend that Plaintiff's ADA, § 504, and constitutional claims should be dismissed because Plaintiff fails to provide sufficient facts to state a claim for relief.  ***Motion to Dismiss (Doc. 33)*** at 5-6.  In addition, State Defendants contend that Plaintiff's claims should be dismissed because "the ultimate issue of fact" was decided at the administrative level and, therefore, Plaintiff is barred by collateral estoppel from re-litigating her claims.  *Id.* at 7-9.  Plaintiff responds that she has stated sufficient facts to state a claim for relief under the ADA, § 504, and state and federal constitutions.  ***Response (Doc. 34)*** at 3, 6.  In addition, Plaintiff contends that these claims are not barred by collateral estoppel because the administrative decision is not a final decision and issues relating to these claims were not raised, litigated, or decided at the administrative level.  *Id.* at 8.

The Court considers State Defendants' ***Motion to Dismiss*** and Plaintiff's claims below.

### A.  Collateral Estoppel

The Court will first consider whether Plaintiff is precluded from bringing her constitutional, ADA and § 504 claims because, if the Court finds that Plaintiff is precluded from raising those claims, it is unnecessary for the Court to consider whether Plaintiff has sufficiently stated a claim for relief.  State Defendants contend that Plaintiff's ADA, § 504 and constitutional claims for declaratory and injunctive relief have already been litigated at the administrative level and, therefore, Plaintiff's only remedy is to appeal the administrative decision.  ***Motion to Dismiss***

*(Doc. 33)* at 8.  State Defendants ask the Court to either preclude Plaintiff from relitigating these issues, or "preclude the re-litigation of factual issues and bind [] Plaintiff to the factual finding contained in the administrative decision." *Id.* at 9-10.  Plaintiff responds that she is not precluded from raising these claims because: (1) the administrative decision is not a final decision since it is currently being appealed; and (2) "many of the factual and legal issues pertaining to [these claims] were never raised, litigated or decided at the administrative level." ***Response*** *(Doc. 34)* at 8.

Under New Mexico law,[4] parties are precluded from re-litigating issues decided at the administrative level if the administrative decision was "rendered under conditions in which the parties ha[d] the opportunity to fully and fairly litigate the issue at the administrative hearing." *Shovelin v. Central N.M. Electric Co-op, Inc.*, 115 N.M. 293, 298, 850 P.2d 996, 1001 (N.M. 1993). In addition, administrative decisions preclude re-litigation of decisions that have been finally adjudicated. *Hobbs v. Zenderman*, 542 F. Supp.2d 1220, 1225 (D. N.M. 2008).  However, "[i]f the issue decided in an earlier proceeding is a pure issue of law, application of the collateral-estoppel or issue-preclusion doctrine is not required." *Id.* (citations omitted).

The parties dispute whether Plaintiff had a full and fair opportunity to litigate her declaratory and injunctive relief claims at the administrative level.  Plaintiff contends that several issues relating to these claims were not raised, litigated or decided at the administrative level, and that the administrative hearing process did not include discovery or strict adherence to the Rules of Evidence.  ***Response*** *(Doc. 34)* at 9-11.  Administrative proceedings provide a full and fair opportunity to litigate if the hearing is conducted as a formal, quasi-judicial proceeding and both

_____

[4]This Court is required to give administrative proceedings the same collateral-estoppel effect they would be given in New Mexico state courts.  *E.g., Brockman v. Wyoming Dept. of Family Services*, 342 F.3d 1159, 1165 (10th Cir. 2003).

parties are represented and are allowed to present evidence and advance legal arguments.  *See Hobbs*, 542 F. Supp.2d at 1225 (citing *Southworth v. Santa Fe Services, Inc.*, 1998-NMCA-109, ¶ 12, 125 N.M. 489, 963 P.2d 566, 569 (N.M. Ct. App. 1998)).  Plaintiff's administrative hearing was held pursuant to NMSA 1978, § 27-3-3, which provides that the hearing shall: (1) be conducted by a hearing officer; (2) include witnesses who testify under oath; (3) include the admission or exclusion of evidence; and (4) provide both sides the opportunity to present their contentions or defenses.  Plaintiff acknowledges that she was represented by counsel at the administrative hearing and that she presented evidence and witnesses.  *See **Response** (Doc. 34)* at 11.  Furthermore, Plaintiff does not claim that she was precluded from raising her declaratory and injunctive relief claims.  However, the hearing officer likely did not have the authority to declare the Mi Via Waiver program statute or regulations unconstitutional.  *See Robinson v. United States*, 718 F.2d 336, 338 (10th Cir. 1983) (explaining that an administrative agency "may provide its views about [its governing] statute . . . , [but] the agency may not declare the statute unconstitutional") (citations omitted).  In any event, the Court need not resolve whether Plaintiff had a full and fair opportunity to litigate her declaratory and injunctive relief claims because, for the reasons stated below, the Court finds that the administrative decision is not a final decision and, therefore, not subject to collateral estoppel.

Even if Plaintiff had an opportunity to fully and fairly litigate her declaratory and injunctive relief claims at the administrative level, the Court does not find that the administrative decision is a final decision for collateral estoppel purposes.  State Defendants rely on *Hobbs v. Zenderman*, for their claim that the administrative decision is final under the collateral-estoppel doctrine.  State Defendants' reliance on *Hobbs* is misplaced, however, because the plaintiff in *Hobbs* voluntarily

stayed his appeal of the administrative decision at the state district court and filed suit in federal court, thereby "leaving [the federal suit] as the only currently active case challenging the termination of Plaintiff's Medicaid benefits." *Id.* at 1223.   The Court in that case explained that, because the "[p]laintiff elected to stay his appeal rather than pursue it at the state district court level . . . [the p]laintiff in effect chose to forego the appeal, at least for purposes of the collateral-estoppel doctrine." *Id.* at 1225.   The Court found that the plaintiff's voluntary stay of the administrative appeal made the administrative decision final, and explained that to hold otherwise would allow the plaintiff, after obtaining an unsuccessful administrative decision, to obtain a second full evidentiary trial in the federal court simply by postponing the appeal of the administrative decision. *Id.*  In this case, Plaintiff is appealing the administrative decision under NMSA 1978, §§ 27-3-4 and 39-3-1.1, which provide a limited review of the agency decision. *See* NMSA, 1978 § 39-3-1.1(D) (judicial review of an agency decision requires the district court to determine whether: "(1) the agency acted fraudulently, arbitrarily or capriciously; (2) the final decision was not supported by substantial evidence; or (3) the agency did not act in accordance with law").  Plaintiff, therefore, is not seeking a full evidentiary trial in this Court.  Accordingly, the holding in *Hobbs* regarding the finality of the administrative decision does not apply.  Because Plaintiff's appeal of her administrative decision is still pending and will involve a limited review (instead of a full evidentiary trial), the Court finds that the administrative decision is not final for collateral estoppel purposes.

In addition, even if the Court were to find that the administrative decision was a final decision, Plaintiff's claims for declaratory and injunctive relief based on violations of the ADA, § 504 and state and federal constitutions are purely legal issues, so they are not necessarily precluded from review.  A legal issue does not have collateral-estoppel effect if it involves a

9

question of statutory construction and is an issue of general interest.   *See Hobbs*, 542 F. Supp.2d at 1225-26 (holding that an issue involving construction of the Medicaid statute was a pure legal question of general interest and, therefore, was not given collateral-estoppel effect). Here, Plaintiff asks the Court to determine whether the Mi Via Waiver program's regulations and standards are discriminatory as they are written and applied.   ***Response*** *(Doc. 34)*.  Plaintiff's claims under the ADA, § 504 and state and federal constitutions require the Court to determine the constitutionality of the Mi Via Waiver program's standards and regulations.   These issues are of general interest because they could result in a change to the Mi Via waiver program and affect all participants in that program.   These are, therefore, legal issues, and the Court is not precluded by collateral estoppel from reviewing them.

Because the administrative decision is not a final decision for collateral estoppel purposes, and because Plaintiff's ADA, § 504 and constitutional claims are pure questions of law, the Court will consider these claims.  While the Court is limited in the scope of its review of Plaintiff's appeal of the administrative decision (*see* NMSA 1978 § 39-3-1.1(D)), neither party argues that the Court is so limited in its review of Plaintiff's ADA, § 504 and constitutional claims.  Because Plaintiff brings these claims separately from her appeal of the administrative decision, and because the Court is not required to give these issues of law collateral estoppel effect, the Court will perform its own analysis of these claims.

### B.  Americans with Disabilities Act and Rehabilitation Act Claims[5]

State Defendants contend that Plaintiff fails to state a claim for relief under the ADA and § 504 because those statutes do not guarantee a certain level of benefits "precisely tailored to [each participant's] particular needs."  *Motion to Dismiss (Doc. 33)* at 5 (citing *Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006)).  Plaintiff responds that she is not seeking a certain level of benefits, but instead that "[t]he basis of [her] ADA and § 504 claims is that the manner used by [State] Defendants to determine [] Plaintiff's level of funding violated those two Acts."  *Response (Doc. 34)* at 3.  Plaintiff contends that she has adequately stated a claim that she was discriminated against in violation of these statutes because she was denied benefits which had been approved for less severely disabled participants in the Mi Via program.  *Id.*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  In order to state a claim under Title II, Plaintiff "must allege that (1) [s]he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."  *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007).  Section 504 states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the

---

[5]The Court considers Plaintiff's ADA and § 504 claims together because the analysis for those claims is very similar.  *See Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n.7 (10th Cir. 1998) ("[T]he legislative history of the ADA indicates that Congress intended judicial interpretation of [§ 504] to be incorporated by reference when interpreting the ADA.") (citations omitted); *Patton v. TIC United Corp.*, 77 F.3d 1235, 1245 (10th Cir. 1996) ("To the extent feasible, we look to decisions construing [§ 504] to assist us in interpreting analogous provisions of the ADA.").

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A prima facie case under § 504 requires proof that: (1) Plaintiff has a disability; (2) Plaintiff is otherwise qualified to participate in the program; (3) the program receives federal money; and (4) the program discriminated against Plaintiff. *Hollonbeck v. U.S. Olympic Committee*, 513 F.3d 1191, 1194 (10th Cir. 2008) (citation omitted). The parties do not dispute the first prong of the ADA or the first, second, or third prongs of § 504. The Court will, therefore, consider whether Plaintiff has adequately stated a claim that she was denied benefits by reason of her disability and whether the Mi Via program discriminated against her.

### 1. The ADA and § 504 Do Not Guarantee Equal Benefits For All Participants

Courts have consistently held that the ADA and § 504 require that participants have meaningful access to a public entity's services and benefits, but they do not guarantee equal benefits for all categories of persons with disabilities. In *Alexander v. Choate*, 469 U.S. 287 (1985), the Supreme Court considered whether a 14-day limitation on inpatient hospital stays covered by state Medicaid discriminated against the disabled because they would be disproportionately impacted by the rule. *Id.* at 290. The Court found that the 14-day rule does not result in the denial of meaningful access to Medicaid services because the rule "does not distinguish between those whose coverage will be reduced and those whose coverage will not on the basis of any test, judgment, or trait that the handicapped as a class are less capable of meeting or less likely of having." *Id.* at 302. The Court, therefore, held that the 14-day limitation does not violate § 504 because it "does not exclude the handicapped from or deny them the benefits of the 14 days of care the State has chosen to provide." *Id.* In reaching its holding, the Court explained that "Medicaid programs do not guarantee

12

that each recipient will receive that level of health care precisely tailored to his or her particular needs," and that § 504 does not guarantee equal results from the provision of state Medicaid benefits and services.  *Id.* at 303.

Similarly, the Tenth Circuit in *Patton v. TIC Untied Corp.*, 77 F.3d 1235, 1246 (10th Cir. 1996), held that a statutory cap on damages was not discriminatory under the ADA even though persons with disabilities were more likely to be affected by it.  The Court reasoned that "[b]ecause the damages limitation applies to all victorious plaintiffs," the plaintiff in that case was not denied access to state services by reason of his disability.  *Id.*  The Court further explained that the damage cap may be discriminatory if the plaintiff could "demonstrate that it was motivated by discriminatory animus," but found that the plaintiff "presented no evidence of an intent to discriminate."  *Id.*

In *Traynor v. Turnage*, 485 U.S. 535, 549 (1988), the Supreme Court explained that § 504 also does not require that benefits must be equally provided to all categories of persons with disabilities.  In that case, the Court considered whether the Veterans' Administration violated § 504 by its decision not to provide an extension of time for educational assistance benefits to veterans who were disabled as a result of alcoholism based on a regulation that defined alcoholism as "willful misconduct."  *Id.* at 538-39.  The Court reasoned that the Veterans' Administration's statute that allowed extensions of time for those who did not become disabled as a result of their own "willful misconduct" was not discriminatory because "[t]here is nothing in [§ 504] that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons."  *Id.* at 549; *see also Rogers v. Dept. of Health and Environmental Control*, 174 F.3d 431, 436 (4th Cir. 1999) (holding that the ADA does not require the same level of benefits for mental and physical disabilities).

## 2. *Olmstead* Holding Limited to Integration Requirement

In her ***Response***, Plaintiff states that *Olmstead v. Zimring*, 527 U.S. 581 (1999) supports her claims that she was discriminated against in violation of the ADA and § 504 when she was denied services under the Mi Via Waiver program.  In *Olmstead*, two women who were institutionalized brought suit against various state officials for failing to place them in community-based programs which were recommended by their doctors.  527 U.S. at 593.  The Supreme Court held that "unjustified isolation . . . is properly regarded as discrimination based on disability" (*id.* at 597), and that "under Title II of the ADA, States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate" (*id.* at 607).  The Supreme Court reasoned that institutional isolation "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life" (*id.* at 600), and it "severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment" (*id.* at 601).  Importantly, in making its decision, the Supreme Court relied on the Attorney General's regulations implementing provisions of Title II, which included a regulation that requires public entities to "administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  *Id.* at 596-97 (relying on 28 C.F.R. § 35.130(d) (1998)).

The holding in *Olmstead*, however, does not support Plaintiff's claims because it is limited to situations involving the unjustified institutional isolation of persons with disabilities.  In *Fisher v. Okla. Health Care Authority*, 335 F.3d 1175 (10th Cir. 2003), the Tenth Circuit, relying on *Olmstead*, held that agency action limiting the number of medically necessary prescriptions paid for by the state for waiver program participants, but not for patients in nursing facilities, stated a claim

under the ADA.  335 F.3d at 1178, 1182.  Relying on the integration requirement of the ADA, the Tenth Circuit held that the prescription limitation violates the ADA because it "does not allow the plaintiffs to receive services for which they are qualified unless they agree to enter a nursing home." *Id.* at 1182.  The Tenth Circuit further reasoned that the prescription limitation violated the integration requirement because it places the plaintiffs at high risk for premature entry into a nursing home. *Id.* at 1184.  Similarly, in *Lewis v. N.M. Dept. of Health*, 94 F. Supp.2d 1217 (D. N.M. 2000), the District Court considered whether it was a violation of the ADA for the state to allow delays of up to seven years to provide home and community-based services under the state's waiver programs to plaintiffs who were eligible for the services and were institutionalized while waiting. 94 F. Supp.2d at 1222.  The District Court relied on *Olmstead* and held that the plaintiffs stated a claim under the ADA because they alleged unnecessary instutionalization and isolation. *Id.* at 1238. *See also Townsend v. Quasim*, 328 F.3d 511, 515, 517-18 (9th Cir. 2003) (holding that requirement for the plaintiff to move to a nursing home in order to receive needed available Medicaid services violated the integration requirement of the ADA, and explaining that *Olmstead* only addressed and applies to *where* treatment should be provided, not *whether* it must be provided).

### 3.  Mi Via Waiver Program Safety Requirement Is Not Discriminatory

Under the reasoning of these cases, the Mi Via Waiver program's requirement that benefits for participants above the maximum annual budget allotment must be related to the participants' safety does not violate the ADA or § 504 because it does not constitute denial of meaningful access to the program's benefits or services.  The Mi Via Waiver program's goal "is to provide a home and community-based alternative to institutional care that facilitates greater participant choice, direction and control over services and supports that are identified in the participant's individualized service and support plan."  NMAC § 8.314.6.9 (2006). There is nothing in the Mi Via Waiver program's

15

rules that preclude people with severe disabilities from accessing the program's services and benefits.  While those participants who require more services than can be provided under the program's initial budget allotment must meet certain requirements for those additional services, there is nothing in those requirements that would preclude participants from having access to "a home and community-based alternative to institutional care."

The denial of benefits to Plaintiff that she would have been able to receive if her benefit request had not exceeded the maximum allotted amount is not discrimination under the ADA or § 504 because it does not deny Plaintiff meaningful access to the program's benefits and services. Plaintiff was provided the highest amount available for her annual budget allotment based on her level of disability, and was then provided an additional significant amount under the provisions for an increased budget.  *Plaintiff's Notice of Appeal and Complaint (Doc. 1-2)* at 7.  The ADA and § 504 do not require that all participants receive the same benefits.  Plaintiff makes no allegation that the Mi Via Waiver program was instituted with "discriminatory animus," or that the denial of her budget requests results in institutional isolation or places her at risk for premature entry into a nursing home.  Therefore, Plaintiff fails to state a claim that the requirement that services above the initial budget allotment be linked to safety needs does not violate the ADA or § 504.

### 4. Method to Determine Budget Allotment Amount is not Discriminatory

In addition, Plaintiff fails to state a claim that the method used to determine the budget allotment in the Mi Via Waiver program is discriminatory.  Plaintiff claims that the method used to determine the budget allotment was determined using averages for all adults with developmental disabilities, rather than all adults with characteristics similar to Plaintiff.  *Plaintiff's Notice of Appeal and Complaint (Doc. 1-2)* at 6, 9.  Taking this claim as true for purposes of this 12(b)(6) motion, the Court finds that it fails as a matter of law under the ADA and § 504 because

the State and the agencies implementing the State's Medicaid funding procedures have discretion to determine the amount of services covered by state Medicaid funding. *See Alexander*, 469 U.S. at 307-08 ("[N]othing in the . . . legislative discussion of [§ 504] suggests that Congress desired to make major inroads on the States' longstanding discretion to choose the proper mix of amount, scope, and duration limitations on services covered by state Medicaid. . . . On the contrary, to require [State agency decisions to] always be made in the way most favorable, or least advantageous, to the handicapped, even when the same benefit is meaningfully and equally offered to them, would be to impose a virtually unworkable requirement on state Medicaid administrators.") (citations omitted); *Sanders v. Kansas Dept. of Social and Rehabilitation Services*, 317 F. Supp.2d 1233, 1246 (D. Kan. 2004) ("The court defers to the institutional judgment of [the state program] in determining the appropriate level of benefits to be distributed in relation to the severity of an individual's handicap.") (citations omitted). Otherwise, the State would have to approve every supplemental budget request made by every participant in the Mi Via program, or suffer a constitutional challenge for any participant who was denied the requested additional items above the base allotment budget. As State Defendants stated in their ***Reply (Doc. 37)*** at 3-4, "[u]nder Plaintiff's various theories, the denial of a request for desired medical services amounts to an automatic discrimination claim. . . [and] the result would be that every desired medical service would have to be provided." The Mi Via program methodology, therefore, is not discriminatory because it distributes benefits in relation to the severity of its participants' disabilities, and participants with more severe disabilities, like Plaintiff, receive a higher base budget allotment to account for any disparity among participants with varying disabilities. *See **Record***, Exhibit 2 at 160.

## C.  Constitutional Claims[6]

## 1.  Due Process

Next, Plaintiff alleges that her due process rights were violated because State Defendants:

(1) "failed to give her adequate notice of the reasons for the partial denial of her budget requests;"

(2) failed to adopt a budget allotment using participants with similar characteristics as Plaintiff;

(3) failed to follow Mi Via Waiver program regulations and standards in denying some of Plaintiff's

budget requests; and (4) failed to allow Plaintiff to participate in prioritizing her budget requests.

***Response*** *(Doc. 34)* at 6-7.  Plaintiff appears to claim that her substantive due process rights were

violated.  *See id.* at 7.  To state a claim for relief for violation of substantive due process, Plaintiff

must demonstrate that State Defendants' conduct is arbitrary, lacking a rational basis, or shocking

to the conscience of the Court.  *See Butler v. Rio Rancho Public Schools Board of Educ.*,

341 F.3d 1197, 1200-01 (10th Cir. 2003).  The Court finds no support for Plaintiff's claim that State

Defendants failed to give her adequate notice of the reasons for the partial denial of her budget

request.  The ***Record***, Exhibit 26 at 339-40, shows that Plaintiff was notified that some of her

requests were denied pursuant to NMAC §  8.314.6.17(C) (2006), which explains that budget

---

[6]In ***Plaintiff's Notice of Appeal and Complaint*** *(Doc. 1-2)* at 14, Plaintiff alleges that she "has a constitutionally protected right to due process and equal protection under the Fourteenth Amendment of the United States Constitution and Article II, Section 18 of the New Mexico Constitution."  In her ***Response*** *(Doc. 34)*, Plaintiff does not contend that the standard for her due process and equal protection claims differs under the United States and New Mexico Constitutions and, therefore, the Court will analyze these claims under the federal standard.  *See, e.g., Valdez v. Wal-mart Stores, Inc.*, 1998-NMCA-030, ¶¶ 6-7, 124 N.M. 655, 954 P.2d 87 (explaining that the equal protection clauses of the United States and New Mexico Constitutions have been interpreted "as providing the same protections," and that "analyses of equal protection challenges are generally the same under . . . New Mexico and federal law") (citation and internal quotation marks omitted); *E. Spire Communications, Inc. v. Baca*, 269 F. Supp.2d 1310, 1324 (D. N.M. 2003), *aff'd*, 392 F.3d 1204 (10th Cir. 2004) (using the federal standard to analyze the plaintiff's claims for violation of substantive due process rights under the New Mexico Constitution because the plaintiff did not present any authority that the standard under the New Mexico Constitution would differ from the standard under the United States Constitution); *see also Christian Child Placement Service of the N.M. Christian Children's Home v. Vestal*, 1998-NMCA-098, ¶ 6, 125 N.M. 426, 962 P.2d 1261 ("[W]hen there is no established precedent, party seeking relief under state constitutional provision must provide reasons for interpreting state provision differently from the federal provision.") (citation omitted).

requests can be approved only if they, *inter alia*,: (1) "increase the participant's functioning related to the disability;" (2) "increase the participant's safety in the home environment;" or (3) "decrease [the participant's] dependence on other medicaid-funded services." NMAC § 8.314.6.17(C)(1)(d)(i)-(iii) (2006). Plaintiff's conclusory allegation that this notice is inadequate fails to state a claim for violation of her substantive due process rights.

In addition, the method used by State Defendants to determine the budget allotment for the Mi Via Waiver program does not violate Plaintiff's substantive due process rights. The Mi Via Waiver Program Standards state that the budget allotments will be calculated based on participants with similar characteristics. NMAC § 8.314.6.17(B)(2) (2006) (stating that the annual budget for participants with no prior waiver cost experience is "calculated based on algorithms developed by the state for recipients of the same waiver population . . . with similar characteristics as the [M]i [V]ia participant"); *see also* Mi Via Waiver Program Service Standards, ***Record***, Exhibit 3 at 162-63. Plaintiff's allegation that State Defendants failed to use participants having similar characteristics as Plaintiff is conclusory and fails to state a claim of violation of her substantive due process rights. Plaintiff's claim is refuted by the fact that her base budget allotment was set at the highest level because of her severe disabilities. Moreover, even if the program's calculation is inadequate to cover persons with as severe disabilities as Plaintiff's, the program accounts for that possibility by providing a method for participants to apply for an increased amount of benefits. Because Plaintiff is afforded access to additional benefits if proven necessary under the regulatory scheme, any failure to establish an initial budget allotment at a higher level for Plaintiff does not deprive her of a substantive due process rights.

Third, Plaintiff's substantive due process rights were not violated by State Defendants' alleged failure to follow Mi Via Waiver program regulations and standards. Plaintiff alleges that

the program's regulations and standards do not require her to show that her budget request over the initial allotment must be linked to her safety needs.  However, the reason Plaintiff is eligible for the increased budget amount in the first place is because she meets the criteria for "Chronic or Intermittent Behavioral Conditions or Cognitive Difficulties," which states that a participant who qualifies under this category "requires additional services in order to keep the participant *safe*." ***Record***, Exhibit 3 at 165 (emphasis added).  State Defendants' requirement that Plaintiff's benefits over the initial budget allotment amount must be linked to her safety is consistent with their regulations and standards because the category under which Plaintiff is eligible for increased benefits explicitly states that those additional needs must be related to safety.  Moreover, even if State Defendants did not follow the program's regulations and standards, such a conclusory allegation does not constitute a substantive due process claim.  *See United States v. Lopez-Serrato*, No. 97-4017, 96-CR-109, 120 F.3d 271, 1997 WL 414117, *2 (July 24, 1997) (unpublished) (holding that agency did not violate due process through negligent failure to adhere to its procedures) (citations omitted); *Continental Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1081 n.7 (D. Kan. 2007) (explaining that a claim that an agency did not follow its regulations does not establish a due process violation when the minimal due process requirements of notice and hearing were satisfied) (citations omitted).

Finally, Plaintiff's claim that State Defendants failed to allow her to participate in prioritizing her budget requests also does not constitute a substantive due process violation.  While the Mi Via Waiver program's goal is to give participants greater choice over their services and benefits, there is nothing in its rules or standards that give complete discretion to participants in the prioritization of their budget requests.  *See, e.g.,* NMAC § 8.314.6.17(E) (2006) (the Mi Via budget is submitted to the State's utilization review contractor for final approval).  Plaintiff participated in

20

preparing her budget requests as provided by the Mi Via Waiver program rules. *See **Appellant Jessica Cohon Statement of Appellant Issues** (Doc. 10)* at 3. It is not arbitrary, nor without a rational basis, nor shocking to the conscience for State Defendants to conduct the final prioritization of Plaintiff's (or any participant's) budget requests. For these reasons, the Court finds that Plaintiff has failed to state a claim for violation of her substantive due process rights.

To the extent Plaintiff is alleging violation of her procedural due process rights, the Court finds that claim fails, as well. Procedural due process is a guarantee that the state will not deprive individuals of a protected liberty or property interest without the benefit of procedures such as notice and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotation marks and citations omitted). Plaintiff was given notice that she could request a re-review or reconsideration or appeal the denial of her budget request by requesting a fair hearing. *See **Record***, Exhibit 26 at 339-40. Plaintiff requested and was given a full hearing during which she was represented by counsel and was permitted to present witnesses and submit evidence (*see **Response** (Doc. 34)* at 11). For these reasons, Plaintiff fails to state a claim that she was denied her procedural due process rights. *See Hobbs v. Zenderman*, 579 F.3d 1171, 1187 (10th Cir. 2009) (holding that the plaintiff's procedural due process rights were not violated when he was afforded an administrative-level hearing during which he was represented by counsel and allowed to submit evidence).

## 2. Equal Protection

Plaintiff claims that her equal protection rights were violated because "she, as a person with severe disabilities, is being treated differently than those in the Mi Via program with less severe disabilities." ***Response** (Doc. 34)* at 7. The Equal Protection Clause of the Fourteenth Amendment

"keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Sanders v. Kansas Dept. of Social and Rehabilitation Services*, 317 F. Supp.2d 1233, 1251 (D. Kan. 2004) (citation and internal quotation marks omitted).  For purposes of the equal protection analysis, persons with disabilities do not constitute a suspect class; therefore the Court's analysis is limited to determining whether the state action is "rationally related to legitimate legislative goals."  *Id.* (citations and internal quotations marks omitted).  Plaintiff claims that she is treated differently than other participants because she has to show that her requested benefits above her annual budget allotment are related to her safety needs.  However, as explained above, the reason Plaintiff is eligible for the increased amount is because she qualifies under the "Chronic or Intermittent Behavioral Conditions or Cognitive Difficulties" category, which requires a showing that she needs additional services "in order to keep [her] safe." ***Record***, Exhibit 3 at 165.  The Court finds that it is rational for State Defendants to require participants who qualify for an increased budget allotment based on those participants' safety needs to be required to show that those additional services be related to the participants' safety.  Plaintiff, therefore, fails to state an equal protection claim.

### D.  Appeal of Administrative Agency Decision

Because the Court finds that Plaintiff has failed to state a claim under the ADA, § 504 and the due process and equal protection clauses of the United States and New Mexico Constitutions, the only claim remaining is Plaintiff's appeal of the administrative record.  The Court believes that the best course of action would be to decline to exercise its supplemental jurisdiction and allow the New Mexico state courts to decide any issues of state law that remain, including the appeal of the administrative agency decision. *See* 28 U.S.C. § 1367(c)(3) (a federal district court may decline supplemental jurisdiction over state claims when it has dismissed all claims over which it has

original jurisdiction); *Smith v. City of Enid, by and through the Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (citations omitted).

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has failed to state a claim for declaratory or injunctive relief under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, or the due process and equal protection clauses of the United States and New Mexico Constitutions.

**IT IS THEREFORE ORDERED** that *Defendants' Motion to Dismiss Plaintiff's Claim for Declaratory/Injunctive Relief and Memorandum in Support (Doc. 33)* is **GRANTED**.  An order of final judgment in favor of all Defendants[7] on Plaintiff's claims for declaratory and injunctive relief under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, or the due process and equal protection clauses of the United States and New Mexico Constitutions will be entered concurrently with this memorandum opinion and order.  The Court will remand the case to the First Judicial District Court, County of Santa Fe, State of New Mexico for further proceedings regarding the remaining state claims, if any, and the administrative appeal.

---

[7]Although the **Motion to Dismiss** *(Doc. 33)* has been brought only by New Mexico Human Services Department, Carolyn Ingram, Pamela Hyde, Alfredo Vigil, and Cindy Padilla, with approval by these Defendants' respective attorneys, these Defendants ask that Plaintiff's claims be dismissed against "all Defendants," presumably to include the New Mexico Department of Health and the New Mexico Aging and Long Term Services Department, who are not named in the motion.  Furthermore, Plaintiff does not distinguish the named Defendants from all Defendants in her **Response** *(Doc. 34)*.  For the reasons stated herein, Plaintiff's claims for declaratory and injunctive relief against these latter Defendants should also be dismissed.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**